# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DREW J. BAUER, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 15-1334 |
| ) | Judge Nora Barry Fischer |
| PENNSYLVANIA STATE BOARD OF ) | |
| AUCTIONEER EXAMINERS, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

### I. INTRODUCTION

Plaintiff Drew J. Bauer ("Plaintiff") initiated this civil action against the Pennsylvania State Board of Auctioneer Examiners and individual Board members Sherman Hostetter, Gerald A. Rader, Matthew C. Radar, Dan Trace, and Nevin B. Rentzel (collectively, "Defendants") on October 14, 2015. (Docket No. 1). In his Amended Complaint, Plaintiff asserts that the State Board violated state and federal law by issuing citations and fines to Plaintiff for auctioning toy trains on the internet without a state auctioneer license. (Docket No. 8 at ¶¶ 38-40). Plaintiff asserts claims pursuant to the Sherman Act, 15 U.S.C. § 1, 2, and the Equal Protection and Due Process clauses of the Fourteenth Amendment.

Presently pending before the Court is Defendants' Motion to Dismiss (Docket No. 12), Plaintiff's Brief in Opposition (Docket No. 16), Defendants' Reply Brief (Docket No. 18), and Plaintiff's Sur-Reply (Docket No. 20). For the reasons set forth below, Defendants' Motion to Dismiss will be GRANTED in part and DENIED in part.

## II. FACTUAL BACKGROUND

Plaintiff is a licensed Pennsylvania attorney in good standing. (Docket No. 8 at ¶ 6). He is also an avid hobbyist who buys, sells, and collects model toy trains. (*Id*. at ¶ 21). Plaintiff has extensive experience within the hobby and has contributed to several books and articles on toy trains. (*Id*.). As a result of this expertise, Plaintiff's legal practice attracts the estates of toy train collectors, many of whom seek his assistance in auctioning their toy trains on the internet. (*Id*.).

In 2004, Plaintiff created a sole proprietorship known as AmbroseBauer Trains ("ABT") in order to serve this market. (*Id*. at ¶¶ 7, 22). Plaintiff's clients grant him a limited power of attorney for the purpose of disposing of their toy train collections through an online auction site. (*Id*. at ¶ 22). Since 2004, Plaintiff has disposed of approximately $20,000,000 in property in a total of 236 auctions. (*Id*. at ¶ 23). Each of those auctions was conducted entirely over the internet through an online bidding platform. (*Id*. at ¶ 24).

In Pennsylvania, the licensing requirements for auctioneers are set forth in the Pennsylvania Auctioneer and Auction Licensing Act, 63 P.S. § 734, as amended by the Auctioneer Licensing and Trading Assistant Registration Act, 63 P.S. §§ 734.1 *et seq*. ("the Act"). The requirements of the Act are primarily enforced by the seven members of the State Board of Auctioneer Examiners ("State Board"), the majority of whom – including each of the individual defendants - are Licensed Auctioneers or Licensed Trading Assistants. (*Id*. at ¶¶ 8-10).

In the spring of 2010, the State Board contacted Plaintiff and requested an opportunity to visit Plaintiff's law offices and inspect his legal clients' files. (*Id*. at ¶ 37). When Plaintiff refused, the State Board issued a citation accusing Plaintiff of violating § 734.3(a) and §734.20(a)(9) of the Act by conducting auctions without a state auctioneer license. (*Id*. at ¶¶ 38-

39).  The State Board also assessed a $1,000.00 fine.  (*Id*.).  Plaintiff's sole proprietorship, ABT, received a similar citation and a $500.00 fine.  (*Id*. at ¶ 40).

On August 10, 2010, a hearing was held on the allegations set forth in the citations.  (*Id*. at ¶ 42).  On August 24, 2010, the Hearing Officer issued orders finding Bauer and ABT guilty of the charges in the citations and upholding the fines.  (*Id*.).  Plaintiff objected to the orders, arguing that, as a licensed attorney, his conduct related to the disposal of clients' property was subject to the rules of the Pennsylvania Supreme Court, rather than the State Board.  (*Id*.).  He also argued that he had not received notice of the August 10, 2010 hearing.  (*Id*.).

On November 15, 2013, the State Board vacated the August 24, 2010 orders based on the lack of notice provided to Plaintiff.  (*Id*. at ¶ 43).  Plaintiff responded by filing objections to the citations, arguing that: (1) his conduct fell within an exception to the Act for sales "conducted by or on behalf of a person appointed by judicial order or decree"; and (2) the State Board lacked jurisdiction over his conduct because the Pennsylvania Constitution vests the Pennsylvania Supreme Court with exclusive power to govern the conduct of attorneys.  (*Id*.).  The State Board rejected each of his objections and scheduled a second hearing on the citations for August 11, 2014.  (*Id*. at ¶ 45).

On May 21, 2014, Plaintiff filed a Petition for Review in the Nature of a Complaint for Declaratory Judgment and Injunction Relief with the Pennsylvania Commonwealth Court.  (*Id*. at ¶ 46).  Following a hearing, the Commonwealth Court denied Plaintiff's request for preliminary relief, in part because he had not exhausted his administrative remedies.  (*Id*. at ¶ 48).  Plaintiff's remaining claims are still pending in state court.

On August 11, 2014, Plaintiff participated in the second citations hearing before a State Board Hearing Officer.  (*Id*.).  On December 19, 2014, the State Board issued a Proposed

Adjudication and Order in which it found Plaintiff guilty of the allegations contained in the May 20, 2010 citations and imposed a $1,500.00 fine. (*Id*.). On September 15, 2015, the State Board issued a Final Order upholding the citations and the fine. (*Id*. at ¶ 49).

### III.   PROCEDURAL HISTORY

As noted above, Plaintiff filed his initial Complaint on October 14, 2015. (Docket No. 1). Defendants initially moved to dismiss that Complaint on December 18, 2015. (Docket No. 5). Plaintiff responded by filing an Amended Complaint on January 11, 2016. (Docket No. 8). That pleading is the subject of the instant Motion to Dismiss.

### IV.   LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F.Supp.2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). As the party asserting jurisdiction, the plaintiff bears the burden of showing that his or her claims are properly before the court. *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). In reviewing a Rule 12(b)(1) motion, a court must determine whether the attack on its jurisdiction is a facial attack or a factual attack. A facial attack challenges the sufficiency of the plaintiff's pleadings. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302, n. 3 (3d Cir. 2006). When considering a facial attack, a court must accept the allegations contained in the plaintiff's complaint as true. *Id.* A factual attack on the court's jurisdiction must be treated differently. *Id.* When considering a factual attack, the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court

4

from deciding for itself the jurisdictional issues raised in the motion to dismiss. *Mortensen*, 549 F.2d at 891.

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 556 U.S. at 684. The court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Id*. at 678-79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). The determination as to whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 556). In light of *Iqbal*, the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

V. DISCUSSION

Plaintiff's Amended Complaint asserts that the State Board and its individual members violated his Due Process and Equal Protection rights under the Fourteenth Amendment of the United States Constitution by interfering with his right to make a living and arbitrarily applying the Act's licensing requirements. Plaintiff also contends that the State Board's enforcement activities violate the Sherman Act because the State Board is primarily composed of active auctioneers seeking to exclude Plaintiff from the market for anticompetitive reasons. Defendants, in their Motion to Dismiss, raise the following arguments: (1) this Court should abstain from hearing Plaintiff's claims for injunctive or declaratory relief pursuant to the principles of *Younger v. Harris*, 401 U.S. 37 (1971); (2) the State Board and its members are immune from Sherman Act liability; and (3) Plaintiff has otherwise failed to state a claim. Because the Court concludes that abstention is appropriate, it need not consider Defendants' other arguments at this time.

The *Younger* abstention doctrine generally provides that "federal courts [should] abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding." *Miller v. Mitchell*, 598 F.3d 139, 145-46 (3d Cir. 2010) (citing *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005)). The United States Supreme Court recently clarified the scope of the doctrine in *Sprint Communications, Inc. v. Jacobs*, -- U.S. --, 134 S.Ct. 584 (2013), stating that abstention is only warranted in "exceptional" circumstances where "the prospect of undue interference with state proceedings counsels against federal relief." *Sprint*, 134 S.Ct. at 588. "These 'exceptional'

circumstances arise only where the federal action interferes with one of three categories of cases: (1) 'ongoing state criminal prosecutions' (as in *Younger* itself); (2) 'certain civil enforcement proceedings' . . .; and (3) 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions' (such as state court civil contempt proceedings)." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 131-32 (3d Cir. 2014) (quoting *Sprint*, 134 S.Ct. at 588). The hallmark of each of the three categories is that the state court proceeding is either criminal or "quasi-criminal" in nature. *Sprint*, 134 S.Ct. at 593.

Courts have routinely held that disciplinary proceedings brought by a state licensing board fall within the second category of cases discussed in *Sprint*. *See, e.g., Middlesex Cnty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982) (applying *Younger* to state-initiated disciplinary proceedings brought against a lawyer for violations of state ethics rules); *Feingold v. Office of Disciplinary Counsel*, 487 F. App'x 743, 745 (3d Cir. 2012) (same). As explained by the Supreme Court:

> Our decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings "akin to a criminal prosecution" in "important respects." Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.

*Sprint*, 134 S.Ct. at 592 (internal citations and quotations omitted). Each of these factors is present in the instant case. As described in the Amended Complaint, the State Board opened an investigation into Plaintiff's auctioneering activities for the express purpose of enforcing state licensing laws that the State Board is authorized by law to enforce. The State Board's investigation resulted in the issuance of a formal citation, a hearing on that citation, and the imposition of a financial sanction. Such proceedings are plainly quasi-criminal in nature within

7

the meaning of *Sprint*. *See Koresko v. Office of Disciplinary Counsel*, 2015 WL 1312269, at *3 (E.D. Pa. Mar. 24, 2015) (noting that state disciplinary proceedings relating to a professional license are "exactly the type of proceedings envisioned by *Younger* since they . . . "bear a close relationship to proceedings criminal in nature.") (quoting *Middlesex*, 457 U.S. at 432).

Once a court is satisfied that the state court proceeding is "exceptional," the court next considers the three factors promulgated by the Supreme Court in *Middlesex* to determine whether "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Hatfield v. Fitzgerald*, 2013 WL 3305492, at *2 (W.D. Pa. June 28, 2013) (quoting *Addiction Specialists*, 411 F.3d at 408). Even if all three requirements are met, the Court does not have "discretion to dismiss rather than stay claims for monetary relief that cannot be redressed in the state proceeding." *Id*. (quoting *Dicesare v. Office of Children, Youth & Families*, 2012 WL 2872811, at *6 (W.D. Pa. July 12, 2012)).

In order to satisfy the first *Younger* prong, the state court proceedings must be ongoing at the time the federal action was filed and must be judicial in nature. *Addiction Specialists*, 411 F.3d at 408-09. The averments in the amended complaint and the docket reports attached as exhibits to Defendants' motion reflect that Plaintiff's appeal is still pending in state court. (See Docket Nos. 8, 13-1). Moreover, there is no question that Plaintiff's appeal to the Commonwealth Court is judicial in nature. *See, e.g.*, *Jones v. Bristol Township*, 2016 WL 1625552, at *3 (E.D. Pa. Apr. 21, 2016) (noting that an appeal to the Commonwealth Court is judicial in nature for purposes of abstention).

The second prong of *Younger* is similarly satisfied. The state court proceedings initiated against Plaintiff implicate Pennsylvania's "strong interest in regulating the practice of

professions within [its] borders . . . [and] establish[ing] standards for licensing all types of professional practitioners in order to protect the valid interests of the public." *Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 947, 951 (Pa. 2004) (holding that the Pennsylvania legislature had evinced a strong state interest in the regulation of the auctioneering profession, and that the State Board "is the agency charged with the authority and responsibility to oversee those engaged in the auctioneering profession within [the] Commonwealth").

The third and final *Younger* prong addresses whether "the state proceeding provides an adequate opportunity to raise constitutional challenges." *Koresko*, 2015 WL 1312269, at *3. In *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176 (3d Cir. 2014), the Third Circuit emphasized that the operative question in considering whether there was "adequate opportunity" is "whether 'state law *clearly bars* the interposition of the constitutional claims.'" *Id*. at 184 (emphasis in original) (quoting *Moore v. Sims*, 442 U.S. 415, 425-26 (1979)). The burden is "on the federal plaintiff to show that state procedural law barred presentation of its claims." *Lazaridis v. Wehmer*, 591 F.3d 666, 670-71 (3d Cir. 2010). In the instant case, there is no indication that Plaintiff was unable to raise his constitutional claims in the state court, that the state court could not provide adequate relief on his claims, or that his constitutional claims could not be litigated as a part of the ongoing state proceedings to which they related. *See Feingold*, 487 F. App'x at 745; *Addiction Specialists*, 411 F.3d at 411-12. To the contrary, the Commonwealth Court is an appropriate venue to raise constitutional claims challenging the actions taken by the Defendants, and Plaintiff may potentially appeal any adverse rulings to the appropriate appellate courts in Pennsylvania. *See Hatfield*, 2013 WL 3305492, at *2 (citing *DiCesare*, 2012 WL 2872811, at *6).[1] As such, the third prong of the *Younger* test is easily met.

---

[1] Although Plaintiff argues, in his sur-reply, that the State Board acted in bad faith, his allegations primarily consist of a disagreement with the State Board as to the underlying facts and a general accusation that the members of the

9

Despite the fact that all three prongs of the *Younger* test have been satisfied, the Court recognizes that Plaintiff would not be entitled to monetary damages if he prevails in his state court appeal. Moreover, Plaintiff's Sherman Act claim is independent of his constitutional claims and has not been raised in state court. As previously noted, the Supreme Court and the Third Circuit have instructed lower courts to "stay rather than dismiss claims that are not cognizable in the parallel state proceeding" and "claims for monetary relief that cannot be redressed in the state proceeding." *Deakins*, 484 U.S. at 202 (citing *Crane v. Fauver*, 762 F.2d 325 (3d Cir. 1985)). Consistent with this directive, courts in this district have issued an administrative closeout order during the pendency of the stay because of the uncertain length of the ongoing proceedings. *See Hatfield*, 2013 WL 3305492, at *3; *DiCesare*, 2012 WL 2872811, at *6. Courts have also provided deadlines for the parties to reopen the case at the time when the state proceedings have fully concluded. *See id*. A similar procedure will be employed in this case.

## VI. CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss (Docket No. 12) is GRANTED in part and DENIED in part. Said Motion is granted to the extent that the Court will abstain from hearing Plaintiff's claims for injunctive and declaratory relief and will stay this case as to his claims requesting monetary damages. Said Motion is denied, without prejudice, in all other respects. An appropriate order will follow.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: May 23, 2016

---

State Board are acting unlawfully for anti-competitive purposes. (Docket No. 20 at 4). The exception to *Younger* for circumstances evincing bad-faith or harassment requires greater specificity than this. *See Koresko*, 2015 WL 1312269, at *4 (allegations of bad-faith as the basis for *Younger* abstention require "specific evidence"); *Feingold*, 487 F. App'x at 746 ("Though Feingold claims that the state proceedings were solely to harass him, thus barring the application of *Younger* abstention, he fails to provide a basis for this allegation.").

cc/ecf:	All counsel of record.